**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 9 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAY EUGENE LANCASTER,

      Petitioner - Appellant,

v.

SAM CALBONE,

      Respondent - Appellee.

No. 99-6206

(W.D. Oklahoma)

(D.C. No. CV-98-1166-A)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Ray Eugene Lancaster seeks a certificate of appealability to appeal the denial by the district court of his petition for a writ of habeas corpus pursuant to

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

28 U.S.C. § 2254. Such a certificate may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

Mr. Lancaster is serving a 100-year sentence after being convicted by a jury in Oklahoma state court on September 18, 1991, of six drug- and gun-related offenses, one of which was later overturned on appeal.[1] In his habeas petition, Mr. Lancaster claims that his trial was fundamentally unfair, in violation of his constitutional right to due process, on two grounds: (1) there was insufficient evidence upon which any reasonable jury could find him guilty, see Jackson v. Virginia, 443 U.S. 307, 319 (1979); and (2) in establishing an element of one of the charges (felon in possession), the prosecution was permitted to introduce evidence of a prior felony conviction during the guilt-innocence stage of his trial, in violation of state law establishing bifurcated proceedings to prevent jury prejudice from such evidence. He has exhausted these claims in state court.

The insufficiency issue revolves around Mr. Lancaster's argument that the government failed to prove that he lived at the residence where the drugs and drug

---

[1] The specific offenses are as follows: Possession of a Controlled Dangerous Substance (marijuana) with Intent to Distribute (Count I), Possession of a Controlled Dangerous Substance (methamphetamine) (Count II), Maintaining a Dwelling House Where a Controlled Dangerous Substance is Kept (Count III), Possession of a Firearm While Committing a Felony (Count IV), Possession of Drug Paraphernalia (Count V), and Possession of a Firearm after Former Conviction of a Felony (Count VI). Count IV was reversed on appeal.

paraphernalia were found. Thus, he asserts, there was no evidence upon which the jury could find that he was maintaining the place as a drug house or that he had any dominion or control over the drugs and paraphernalia found there.

He does not dispute that he had been living at the residence in question, located at 433 Southeast 54th Street, Oklahoma City, Oklahoma, with Diana Pena. Rather, he contends that he moved out of the residence about a week before the police, responding to a disturbance call, found a gun, drugs, and drug paraphernalia at the residence, and that the only evidence connecting him to the house was a current water bill in his name. He claims this was insufficient to prove his occupancy at the time the police came. He was not at the house when the police arrived.

Mr. Lancaster acknowledges that his car was at the residence on the day the police came, but explains that "he moved out[] so fast that he left his Oldsmobile car behind" and that "[o]ne week later, he returned to get his car but found himself at the wrong end of a revolver of Mrs. Pena," Appellant's Br. at 17. Perhaps some version of this is associated with the disturbance call to the police; but none of these allegations appear as evidence in the trial record.

Among others, Mr. Lancaster makes the following additional arguments and allegations: Pena was not called to testify; the men's clothes found in the house were not introduced into evidence, and they belonged to someone else; no

fingerprint evidence was offered, especially as to the gun found on Pena's bed; Pena was not charged, nor was anyone besides Mr. Lancaster, so it is impossible for Mr. Lancaster to have been in joint constructive possession of the residence and its illegal contents; he did not have exclusive access to the dwelling; even though drugs were in the residence, there was no proof that a drug transaction took place there; and, no ledgers were found.

Contrary to Mr. Lancaster's argument that on the day the police came he no longer had any connection with the residence, and the only evidence linking him to it was a water bill in his name, Officer Danny Fitzwilliam testified as follows with respect to his arrest of Mr. Lancaster on the day in question, after a high speed automobile pursuit:

> Q    [By Mr. Deutsch] You had taken the Defendant into custody as you explained just before lunch, is that correct?
>
> A    Yes, sir, I had.
>
> Q    And you booked in the portion of the marijuana cigarette that you told us about, is that correct?
>
> A    Yes, sir, I did.
>
> Q    As part of your routine book-in questions of the Defendant, did you ask him where he lived?
>
> A    Yes, sir, I did.
>
> Q    What did he tell you?

A       433 Southeast 54th Street.

Q       The same address that we've been talking about?

A       Yes, sir.

Q       Did you take the Defendant back to that residence?

A       Yes, sir.

Q       Can you describe, I don't want to know anything that was said, I just want to know, how did he look, what was his physical demeanor like at that time?

A       He appeared extremely nervous.

Q       Why do you say that?

A       He was sweating and shaking, very pale.

Trial Tr. at 93.  The officer further testified as follows:

Q       [By Mr. Johnston] And when did he give you that [433 Southeast 54th] as his address?

A       When I asked him where he lived.

Q       And that was in the car right after you arrested him?

A       Yes , sir.

Id. at 106.

Additionally, during the cross-examination of Officer John Gonshor,

Mr. Lancaster's counsel invited the following exchange:

Q       [By Mr. Johnston] Now, during the entire period while you were at the residence, you never saw, you never saw Ray Lancaster, the Defendant, there, did you?

-5-

A     I never saw him inside the residence, no.

Q     You don't know whether or not he lived there?

A     Well, from statements made, I believe he did live there.

Q     Statements made by whom?

A     Diana Pena.

Id. at 63-64.

Mr. Lancaster's argument on appeal—that the men's clothing found inside the residence was not his—is inconsistent with his position at trial. At trial Mr. Lancaster made no attempt to dispute that his clothes were at the residence. Rather, his strategy was to offer the explanation that he was at the residence to retrieve his clothing on the day in question—having left most of his belongings there when he allegedly moved out a week earlier. Thus, his witness, Susan Snelgrove, testified as follows:

Q     [By Mr. Johnston] Did he bring all of his clothes with him?

A     He brought a few clothes.

. . . .

Q     [By Mr. Deutsch]  Do you know whether or not Ray was at that house on October 6th?

A     He was supposed to go get his clothes.

Id. at 128, 131-32.  And, when defense counsel was cross-examining the officers who entered the house, he attempted, unsuccessfully, to obtain their testimony

-6-

that they observed evidence of Mr. Lancaster's clothes in boxes consistent with the argument that Mr. Lancaster was moving them out.   Id. at 44-45.  The officers not only did not see any such sign of departure, they testified that clothes were generally strewn about the bedroom and elsewhere in an untidy fashion.   Id. at 45.

It is also undisputed that when the police officers spotted Mr. Lancaster's car, just a few minutes after they had arrived at the residence and put out a call on that vehicle, Mr. Lancaster, upon observing the police, engaged in a high speed attempt to flee.  And, finally, there   was a water bill for the residence in question, dated just a week before the police came to the residence, and it was addressed to Mr. Lancaster.

In short, there was ample evidence from which the jury could reasonably infer that Mr. Lancaster either presently lived in or otherwise had continuing joint control over the premises in which the drugs and drug paraphernalia were found, whether or not he was staying a couple of blocks away with Susan Snelgrove and her husband because he was fighting with Diana Pena at the time.   Id. at 128.  Mr. Lancaster contends that such a conclusion is unreasonable since he presented evidence that he was staying with Susan Snelgrove and her husband and he did not live at the residence in question at the time; but we are not the jury and our review on habeas corpus is extremely narrow.  Such review requires us to view the evidence "in the light most favorable to the prosecution," and, in   that light,

determine whether " <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."    <u>Jackson</u>, 443 U.S. at 319.  On that basis there is no substantial showing here of a violation of the Federal Constitution. [2]

Mr. Lancaster's second claim is that his constitutional rights were violated when evidence of a prior felony conviction for attempted rape was introduced in the guilt-innocence stage of the proceedings contrary to Oklahoma's procedure for bifurcating trial stages.  The evidence was introduced by stipulation, without objection by defense counsel, as part of the prosecution's burden to prove the element of a prior felony conviction.  Trial Tr. at 115.  The prosecution did not seek any live testimony on the subject, did not argue the fact of Mr. Lancaster's prior conviction to the jury, and did not attempt to introduce evidence of an additional three prior felony convictions.  The court instructed the jury to restrict its consideration of the prior conviction to proof of an element.

---

[2]On appeal Mr. Lancaster argues for the first time that his counsel was ineffective for failing to call six witnesses who allegedly would have testified that he had moved out of the residence in question.  Two of the witnesses allegedly would have testified that another man had moved in.  Also, counsel was allegedly ineffective for failing to show a family relationship between Pena and members of the city police department resulting in a police bias against Mr. Lancaster.  These claims were not presented to the state courts and not raised in the habeas petition here.  Accordingly, we decline to consider them.

A state law claim is not cognizable in a federal habeas proceeding.      Estelle v. McGuire , 502 U.S. 62, 67-68 (1991).  Furthermore, the Oklahoma Court of Criminal Appeals held that in this case Oklahoma law on bifurcated proceedings was not violated.   See Summary Op. at 2, Ex. L to the State's Resp. to Pet. for Writ of Habeas Corpus.

Citing  Hopkinson v. Shillinger   , 866 F.2d 1185, 1197 (10th Cir. 1989),     on reh'g. , 888 F.2d 1286 (10th Cir. 1989), Mr. Lancaster also urges that allowing evidence of his prior conviction as proof of an element in the guilt phase of his trial amounted not only to plain error (there being no objection), but to constitutional error because it rendered his trial fundamentally unfair.  There is no support for this proposition.

As indicated above, the trial transcript does not reveal any improper use by the prosecution of the fact of Mr. Lancaster's prior conviction.  The unembellished presentation of the fact as part of the government's burden to prove each element of the crime charged, does not present a constitutional question.  In  Old Chief v. United States   , 519 U.S. 172 (1997), the Supreme Court addressed an evidentiary question relating to how, not whether, the required element of a prior conviction might be proved during the guilt phase of a trial. That decision does not suggest that the issue of admissibility is constitutional, and

offers nothing in support of some sort of constitutional bifurcation requirement in state court trials.

In addition to the foregoing, we adopt the reasoning contained in the magistrate judge's thorough Report and Recommendation, filed March 30, 1999, and the District Court's Order, filed April 23, 1999. Based upon our review of the record, and for the reasons stated, we conclude that Mr. Lancaster has failed to make a substantial showing of the denial of a constitutional right.

Accordingly, we DENY his application for a certificate of appealability and DISMISS the appeal.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge