**Mark A. HOPKINSON, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

**No. 85–215.**

Supreme Court of Wyoming.

Oct. 25, 1985.

Before THOMAS, C.J., ROSE and CARDINE, JJ., RAPER, J., Retired, and JOHNSON, District Judge.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

THOMAS, Chief Justice.

The Court having considered Petitioner's Petition for Writ of Habeas Corpus finds that it should be denied for the following reasons:

■ 1. This Court has decided the question of whether Petitioner could be charged and tried as a principal in Wyoming for accessorial acts taking place in another state. *Hopkinson v. State*, Wyo., 632 P.2d 79, 97–100 (1981), *cert. denied* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982) (*Hopkinson I*). In use of the word "overboard" the Court was referring to dicta of *Goldsmith v. Cheney*, Wyo., 468 P.2d 813 (1970). Goldsmith involved prosecution of an accessory committing accessorial acts in Wyoming to a murder which took place in Nevada. This Court only needed to decide whether he could be prosecuted in Wyoming and did hold that he could be but unnecessarily added as dicta, he could be prosecuted "only there." This Court had never before until Hopkinson decided the case of an accessory acting in that role in another state being prosecuted for a murder taking place in Wyoming. This Court was not required to decide the question in Goldsmith that was decided in Hopkinson and in such case the use of dicta in Goldsmith is a nullity. *Felske v. State*, Wyo., 706 P.2d 257 (1985). Hopkinson I is the law of this state on the question never before decided by this Court, and the courts of this state had jurisdiction in Hopkinson I to entertain the prosecution. Petitioner's ex post facto theory even if the law, which we need not decide, is inapplicable to this case. The question is res judicata.

■ 2. We find *Caldwell v. Mississippi*, 472 U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), inapplicable. While the Petitioner has never before raised the question of the prosecutor in argument shifting from the jury to the Wyoming Supreme Court the responsibility for determining the appropriateness of a death sentence and we could dispose of it on procedural grounds, we do not. The retrial of the penalty phase was had following Hopkinson I in which this Court affirmed the guilt phase but reversed the death sentence and sent it back for that purpose.

The Petitioner has taken out of the context of the whole trial and closing arguments in particular in *Hopkinson v. State*, Wyo., 664 P.2d 43, *cert. denied* —— U.S.

——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983) (*Hopkinson II*), a statement he mistakenly believes shifted the responsibility for determining the appropriateness of the death sentence from the jury to this Court. A majority of the United States Supreme Court in *Caldwell*, in considering the concurring opinion of Justice O'Connor, did not hold that all references to the appellate process in death cases are error. The majority opinion of four does not include Justice O'Connor on that point, who made it clear that it is proper to permit the accurate instruction of jurors on the sentencing procedure including the existence and limited nature of appellate review in favor of a policy of jury education.

It must be kept in mind that the jury in *Hopkinson II* did not have a guilt finding function. When the trial opened, the trial judge explained to them that the case (*Hopkinson I*) had been to the Wyoming Supreme Court and it had upheld the guilty aspect but that the sentencing phase had to be retried in the sentencing and that they were there for that purpose. The jury therefore knew that it was there for that purpose because of error in the previous trial. The court cautioned the jurors that the narrative was simply a summary of events taken from the Wyoming Supreme Court's opinion in *Hopkinson I.* The jurors were entitled to an instruction on their function in a bifurcated death case in which they were not the jurors who heard the guilt phase. They were fully aware and had to be that the Supreme Court could by review overturn a jury's verdict.

The prosecution in closing was not using his argument to lull the jury into believing that if the jury made a mistake, the Wyoming Supreme Court would find and correct it and thus assume the responsibility for the death sentence.

We notice the vast difference of the language used by the prosecutor and the trial judge in *Caldwell* and that used by the prosecution and trial judge in *Hopkinson II.* In *Caldwell*, the prosecutor argued " 'your decision is not the final decision. * * Your decision is reviewable,' " which was

approved by the trial judge in stating, " 'I think it proper that the jury realizes that it is reviewable automatically as the death penalty commands.' " In *Hopkinson II*, defense counsel objected to a statement in the prosecutor's rebuttal argument that there was evidence that the guilt phase of *Hopkinson I* had gone to the Supreme Court of the United States and certiorari had been denied. The prosecutor pointed out that the clerk of the district court had testified from her records that such was the case. The defense counsel had argued that because there is some possibility of error the death sentence should not be imposed. The prosecutor pointed out specifically that the trial judge, the prosecutors and the jury had their roles in the trial and the jury should not concern itself with error:

> "The testimony of Mrs. Barbara Oakley, the clerk of this court, when I asked her if the guilt phase had gone to the United States Supreme Court and had come back from them prior to this testimony, she said, yes, the record revealed that. That is the facts in this case. But the Wyoming Supreme Court sent it back because of error in the first trial on the death penalty as it pertained to the Jeff Green matter. The Wyoming Supreme Court will review whatever action you take in this case. It's an automatic review. *So, the matter of error, the matter of mistake is not one for us to be concerned with here.* Judge Ranck has done his best, his duty to instruct you on the law. We have given you the facts from the witness stand as best we can. You have to do your duty as best you can, and I'm sure you will. But, because of some possibility of error, they say don't give him the death penalty. That's not what the law is. It's nowhere in your instructions from the Court." (Emphasis added.)

As we said in *Hopkinson I*, 632 P.2d at 166, "It is necessary to examine the arguments of counsel in their entirety and not take sentences and phrases out of the context of the complete picture being presented by the prosecutor." Petitioner has

grasped for a point not present. We find no error.

■ 3. *State ex rel. Hopkinson v. District Court, Teton County*, Wyo., 696 P.2d 54, *cert. denied* — U.S. ——, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985) (*Hopkinson IV*), disposed of Petitioner's assertion that he is entitled to relief in a post-conviction, including a habeas corpus, proceeding without setting forth in the petition and attachments the evidentiary basis for such a drastic step of upsetting the judgment and sentence. No more grounds for relief are set forth in the Petition for Writ of Habeas Corpus herein filed than what were set out in the Consolidated Petition for Post-Conviction Relief and Writ of Habeas Corpus filed by this Petitioner in *Hopkinson IV*, other than the issue disposed of in paragraph "2" above. The issues are res judicata.

■ 4. All other questions raised by Petitioner have been decided and redecided in the previous *Hopkinson* cases and are res judicata. No new facts or law are presented which shed any new light on the case. We consider only the questions referred to in paragraphs "1", "2" and "3" above worthy of special mention and discussion herein.

IT IS ORDERED that the Petition for Writ of Habeas Corpus be, and is, denied; and

IT IS FURTHER ORDERED that this order be published in Pacific Reporter Second and for convenience be referred to as *Hopkinson VI* for any future use.