Randy Lynn **WOOLLS,**
Petitioner-Appellant,

v.

O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 86–1380.

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1986.

---

George Scharmen, San Antonio, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

On October 8, 1979, the appellant, Randy Lynn Woolls, was convicted of capital murder. He is scheduled to be executed before sunrise on August 20, 1986. Woolls seeks a certificate of probable cause in order to proceed with his appeal. Finding no substantial showing of the denial of a federal right, the appellant's motion for a certificate of probable cause is DENIED.

I.

The facts of the murder itself are generally undisputed. See the statement of facts in *Woolls v. State*, 665 S.W.2d 455, 467–70 (Tex.Crim.App.1983) (en banc). The appellant's conviction and sentence were affirmed on direct appeal to the Texas Court of Criminal Appeals. *Woolls*, 665 S.W.2d at 472. A petition for a writ of certiorari to the United States Supreme Court was denied. *Woolls v. Texas*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 889 (1984).

The appellant then filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Texas.[1] In the district court, the appellant raised the same issues as are presented on appeal. The case was referred to a magistrate for findings and recommendations. The magistrate found that an evidentiary hearing was not required and recommended that the appellant's petition for a writ of habeas corpus be denied.

Upon the appellant's failure to timely file objections to the magistrate's findings and recommendations, the district court, upon motion, made a finding of excusable neglect and allowed the appellant to file objections. The district court reviewed *de novo* those findings and recommendations to which specific objections had been made. Finding no error, the district court adopted the findings and conclusions of the magistrate and denied the appellant's petition for a writ of habeas corpus.

1. It does not appear that the appellant pursued any state habeas remedies. The respondent asserts that he believes the appellant has exhausted his state remedies; therefore, the State is deemed to have waived the exhaustion requirement. *See McGee v. Estelle*, 722 F.2d 1206, 1213 (5th Cir.1984) (en banc).

The appellant filed a timely notice of appeal and sought leave from the district court to appeal in forma pauperis and for a certificate of probable cause. The district court denied both IFP and CPC.

The appellant now seeks leave from this court to proceed on appeal IFP, for a stay of execution, and for a certificate of probable cause. Without a certificate of probable cause, Woolls cannot proceed with his appeal in this court. Fed.R.App.P. 22(b). *See Fabian v. Reed,* 714 F.2d 39, 40 (5th Cir.1983) (per curiam). It is that motion which we will now address.

To obtain a certificate of probable cause, Woolls must make a " 'substantial showing of the denial of [a] federal right.' " *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090, 1104 (1983) (quoting *Stewart v. Beto,* 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)). The appellant need not show that he will prevail on the merits but he must demonstrate that the issues raised in his petition for a writ of habeas corpus are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.' " *Id.* at 893 n. 4, 103 S.Ct. at 3394–95 n. 4, 77 L.Ed.2d at 1104 n. 4 (quoting *Gordon v. Willis,* 516 F.Supp. 911, 913 (N.D.Ga.1980)). *See O'Bryan v. McKaskle,* 729 F.2d 991, 994 (5th Cir.1984) (per curiam).

## A. Judicial review of FDA enforcement actions.

The appellant first asserts that the Food and Drug Administration's (FDA) refusal to evaluate certain drugs used for lethal injection to determine whether those drugs quickly and effectively cause a painless death is judicially reviewable pursuant to the Administrative Procedure Act. This claim has been foreclosed by the Supreme Court's recent decision in *Heckler v. Chaney,* 470 U.S. 821, ——, 105 S.Ct. 1649, 1659, 84 L.Ed.2d 714, 728 (1985), which held that the FDA's refusal to initiate enforcement proceedings under the federal Food, Drug, and Cosmetic Act with respect to drugs used to perform lethal injections was not subject to judicial review. Congress's failure to provide for judicial review of FDA's discretionary decision not to investigate the lethal use of sodium thiopental does not constitute a denial of appellant's right to due process of law. The action or inaction of the administrative agency is not a punishment and so cannot be characterized as cruel or unusual.

## B. Use of sodium thiopental for lethal injections.

Although not clearly raised in his petition as a separate ground for relief, we will nevertheless review the appellant's apparent assertion that use by the Texas Department of Corrections of sodium thiopental violates his eighth amendment right to be free from cruel and unusual punishment because, when administered by untrained personnel or in improper dosages, this drug may cause conscious death by suffocation. Appellant's argument is premised on supposition unsupported by fact. The appellant proffers the affidavit of Dr. Ward Casscells, which recites an American Medical Association recommendation that a physician should not be a participant in a legally authorized execution. The appellant then offers the affidavit of Dr. Leroy David Vandam, which asserts that, even if administered by an expert, the injection of sodium thiopental may cause physical and mental pain due to possible technical difficulties in administering the drug. Finally, the appellant submits the affidavit of Dr. Richard S. Hodes, who concludes that, even if administered by a professional, individual responses to this drug can be quite varied. Thus, if an individual is not rendered unconscious before the injection of the paralytic drug, the individual would be aware of the onset of loss of consciousness and the paralytic drug would produce a sense of shortness of breath and suffocation over a two to three minute period. Depending on the specific paralytic drug administered, the individual may also experience a sensation of multiple electric shocks over the

entire body with erratic muscle twitching followed by acute paralysis and suffocation.

■ First, the appellant has not even alleged, much less produced any evidence, that the Texas Department of Corrections allows anyone other than trained medical personnel to administer lethal injections. Second, the appellant has neither alleged nor produced evidence that would indicate that improper dosages of sodium thiopental have been or will be administered so as to result in physical or mental pain. Finally, even if the physical and mental manifestations noted by Dr. Hodes were experienced by an individual, this showing "of discomfort or unnecessary pain falls far short of the showing found insufficient in *Gray v. Lucas,* [710 F.2d 1048, 1057–61 (5th Cir.), *cert. denied,* 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983) ]." *O'Bryan,* 729 F.2d at 994. Woolls has failed to make a substantial showing of the denial of his right to be free from cruel and unusual punishment under the eighth amendment.

## C. The failure to define "reasonable doubt" during voir dire.

The appellant next asserts that the failure of the Texas courts to require a definition of "reasonable doubt" resulted in the improper exclusion of veniremember Gutierrez. First, the appellant asserts that the failure of the State of Texas to define "reasonable doubt" makes it impossible for a potential juror to state whether he or she could follow that law. We find this assertion untenable in this case, where the potential juror understood the definition of "reasonable doubt" but admitted that he would apply his own, more strenuous, standard.

During voir dire, veniremember Gutierrez was faced with the question whether he would hold the State to its burden of proving guilt and punishment issues beyond a reasonable doubt or whether he would require the State to prove these issues under a stricter standard, namely "beyond all doubt." The following colloquy occurred between the prosecutor and Gutierrez:

Q. In order to clear your conscience, if you were called upon to determine whether or not death should be imposed, to answer the two questions to satisfy Mr. Gutierrez' (sic) conscience, regardless of the other eleven people, but to satisfy Mr. Gutierrez, you would require the State to remove all doubt that he did it deliberately and he was a continuing threat to society before Mr. Gutierrez could vote on these two issues knowing at the time that it would result at the time in sentencing the defendant to death?

A. Yes.

THE COURT: When the District Attorney asked you that question he said, "remove all doubt." Are you saying remove all reasonable doubt?

MR. GUTIERREZ: All doubt.

THE COURT: All right. I sustain the challenge.

*Woolls,* 665 S.W.2d at 464. After continued questioning by the appellant's counsel, the court proceeded to question Gutierrez's understanding of "reasonable doubt":

THE COURT: All right. In the deliberation in a capital case where a death penalty is a possible result, you've heard the evidence and you've retired to the jury room, and in your mind you have a doubt concerning the defendant's guilt or innocence, but you classify that doubt in your mind as a non-reasonable or unreasonable doubt, one not based on reason, could you [then] find the defendant guilty of the offense?

MR. GUTIERREZ: If there's any doubt in my mind I could not.

THE COURT: Whether that doubt was reasonable or unreasonable?

MR. GUTIERREZ: Yes.

\* \* \* \* \* \*

THE COURT: Let me ask you one other [question]. When you say it's to be clear in your mind, are you saying that you are using the judgment scale that's it's (sic) beyond all doubt or beyond a reasonable doubt?

MR. GUTIERREZ: Beyond all doubt.

THE COURT: And those are not synonymous. That's not the same standard?

MR. GUTIERREZ: No. I don't think so.

*Id.* at 465.

■ Veniremember Gutierrez made it clear that he could not follow the court's instruction with respect to the State's burden of proof. Gutierrez understood that "reasonable doubt" and "beyond all doubt" were different standards. Nevertheless, even if he believed his doubts were unreasonable, Gutierrez would still require the State, at the guilt-innocence stage, to alleviate not only his admittedly unreasonable doubt but to prove the defendant's guilt beyond all doubt. We cannot countenance such a prospective juror's admission that he would refuse to abide by the trial court's instruction as to the proper burden of proof to which the jury must hold the State. Under *Adams v. Texas*, 448 U.S. 38, 44, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589 (1980), we must conclude that veniremember Gutierrez was unwilling or unable to follow the court's instructions or to obey the law or follow his oath. His exclusion was, therefore, proper.[2]

### D. Exclusion of Veniremembers.

■ Woolls finally asserts that the trial court erred in sustaining the State's challenge for cause of five veniremembers. Finding the trial court's exclusion for cause "fairly supported by the record," we conclude that the appellant has failed to make a substantial showing of the denial of a federal right with respect to the exclusion of prospective jurors.

In *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Supreme Court clarified the standard under which a juror may be excluded for cause because of his or her views on capital punishment. Relying on the test enunciated in *Adams v. Texas*, the Supreme Court held

that a prospective juror may be excluded for cause when the juror's views would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 851–52 (footnote omitted) (quoting *Adams v. Texas*, 448 U.S. at 45, 100 S.Ct. at 2526, 65 L.Ed.2d at 589).

In *Wainwright v. Witt*, the Supreme Court also definitively established the degree of deference that a federal habeas court must pay to a state trial court's determination that a juror should be excluded for cause. Relying on its previous decision in *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), the Court held that a trial court's determination that a prospective capital sentencing juror should be excluded for cause is a finding of fact subject to 28 U.S.C. § 2254(d). As such, the finding of the trial judge is "presumed correct" unless one of the reasons enumerated in § 2254(d) is present. As in *Wainwright v. Witt*, the appellant here "does not suggest that paragraphs 1 through 7 are applicable; he must therefore rest his case on the exception in paragraph 8—that the finding of bias is 'not fairly supported' by the record viewed 'as a whole.' " 469 U.S. at 431, 105 S.Ct. at 856, 83 L.Ed.2d at 856.

We have carefully reviewed the testimony with respect to each excluded prospective juror. In each case, the record indicates that the prospective juror's views would have prevented or substantially impaired his or her performance of his or her duties as a juror. Veniremember Kendall stated that he would automatically vote against the death penalty regardless of how gruesome, brutal, or bizarre the facts of the particular case. He further affirmed that he was unalterably opposed to capital punishment. Veniremember Shelton stated that under no circumstances could he consider the imposition of the

---

2. The appellant also asserts that because "reasonable doubt" was not defined, the trial court here acted arbitrarily in setting a standard for reasonable doubt which allowed him to empanel a death-qualified jury. We find no merit in

this argument because the trial court properly excused Gutierrez on the grounds that he could not follow the court's instructions and the law regarding the State's burden of proof.

death penalty. Veniremember Thigpen initially declared her opposition to the death penalty by affirming that she would automatically vote against its imposition regardless of the facts of the case. Mrs. Thigpen waivered, however, when asked if she could impose the death penalty if someone "close to her" was the victim. She later qualified this statement by saying that she could think of no circumstances under which she could consider giving the death penalty or voting for an issue which would result in the imposition of the death penalty. Veniremember McCullough stated that he would consider whether the death penalty could be imposed or not but that *he* would automatically vote "no" to at least one of the questions during the punishment phase regardless of the facts adduced at trial. Finally, veniremember Huerta stated that, regardless of the facts presented, she would automatically vote "no" to the questions presented during the penalty phase simply because a positive response would result in the death penalty.

The state trial court's findings were amply supported by the record. The appellant has not adduced " 'clear and convincing evidence that the factual determination by the State court was erroneous.'" *Wainwright v. Witt,* 469 U.S. at 435, 105 S.Ct. at 858, 83 L.Ed.2d at 859.

The appellant's motion for leave to proceed in forma pauperis is GRANTED. Because the appellant has failed to make a substantial showing of the denial of a federal right, his motion for a certificate of probable cause is DENIED. Accordingly, the motion for a stay of execution is also DENIED, and this appeal is

DISMISSED.