**Mark A. HOPKINSON, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

No. 90–218.

Supreme Court of Wyoming.

Sept. 20, 1990.

Dissenting Opinion of
Justice Cardine Sept. 21, 1990.

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

This case came on before the court upon the Petition for Writ of Habeas Corpus, together with attachments, filed on behalf of the Petitioner, Mark A. Hopkinson, on September 10, 1990; the Motion to Dismiss Petition for Writ of Habeas Corpus and the Memorandum in Support of Motion to Dismiss Petition for Writ of Habeas Corpus, filed on behalf of the Respondent, the State of Wyoming, on September 13, 1990; the

Motion for Leave to File Supplement to Memorandum in Support of Motion to Dismiss Petition for Writ of Habeas Corpus, filed on behalf of the State of Wyoming on September 17, 1990; and the arguments of counsel for the parties, and the court, having considered the file and record of the court; the authorities presented by the parties; and the arguments of counsel, and being fully advised in the premises finds that:

1. The contention of the Petitioner that remarks of the prosecutor in the second trial on the penalty to be imposed shifted responsibility for imposition of the death penalty away from the jury in violation of the rule announced in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), was considered and rejected in *Hopkinson v. State*, 708 P.2d 46 (Wyo.1985); *Hopkinson v. Shillinger*, 645 F.Supp. 374 (D.Wyo.1986), reh. denied 648 F.Supp. 141 (D.Wyo.1986); and *Hopkinson v. Shillinger*, 866 F.2d 1185 (10th Cir.1989), cert. denied —— U.S. ——, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990).

2. The Petitioner contends that the essential equivalent of victim impact evidence was presented to the sentencing jury through argument of the prosecutor in violation of the rule announced in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). This issue of prosecutorial misconduct was considered and rejected in *Hopkinson v. State*, 632 P.2d 79 (Wyo.1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), and, as to the penalty phase of the trial, again in *Hopkinson v. State*, 664 P.2d 43 (Wyo. 1983), cert. denied 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

3. The contentions of the Petitioner that various instances of prosecutorial misconduct, justifying reversal of his conviction, occurred during the guilt phase of his trial have been considered and rejected in *Hopkinson v. State*, 632 P.2d 79 (Wyo.1981), cert. denied 445 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Hopkinson v. State*, 679 P.2d 1008 (Wyo.1984), cert. denied 469 U.S. 873, 105 S.Ct. 228, 83 L.Ed.2d 157 (1984); *State ex rel. Hopkinson v. District*

Court, Teton County, 696 P.2d 54 (Wyo. 1985), cert. denied 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985); and Hopkinson v. State, 708 P.2d 46 (Wyo.1985). This claim also was considered and rejected by the United States District Court, Hopkinson v. Shillinger, 645 F.Supp. 374 (D.Wyo. 1986), reh. denied 648 F.Supp. 141 (D.Wyo. 1986), and the rulings of that court were affirmed by the United States Court of Appeals. Hopkinson v. Shillinger, 866 F.2d 1185 (10th Cir.1989), cert. denied — U.S. —, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990).

4. The argument of the Petitioner that he was denied material to which he was entitled under the doctrine of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), was addressed and rejected in Hopkinson v. State, 679 P.2d 1008 (Wyo.1984), cert. denied 469 U.S. 873, 105 S.Ct. 228, 83 L.Ed.2d 157 (1984). This court also has addressed the question in connection with motions for discovery. State ex rel. Hopkinson v. District Court, Teton County, 696 P.2d 54 (Wyo.1985), cert. denied 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985). In addition it has been scrutinized by the United States Court of Appeals and the United States District Court at the direction of the appellate court. Hopkinson v. Shillinger, 866 F.2d 1185 (10th Cir.1989), cert. denied — U.S. —, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990).

5. The several claims by Petitioner that reversible error occurred in connection with the instructions to the jury with respect to aggravating circumstances have been considered and rejected in Hopkinson v. State, 664 P.2d 43 (Wyo.1983), cert. denied 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

6. The Petitioner's earnest arguments that error occurred in the second penalty trial because of the instructions to the jury relating to mitigating circumstances in the light of Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and McKoy v. North Carolina, — U.S. —, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), fail of persuasion because the record in this

case would not have justified reversal based upon the legal principle articulated in those cases, the cases are distinguishable, and, under the circumstances, the court is not required to, nor would it be appropriate, to apply those cases retrospectively. The issue of the instructions relating to mitigating circumstances has been before this court, Hopkinson v. State, 664 P.2d 43 (Wyo.1983), cert. denied 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983), and the United States District Court, Hopkinson v. Shillinger, 645 F.Supp. 374 (D.Wyo.1986), reh. denied 648 F.Supp. 141 (D.Wyo.1986), and the instructions were approved.

7. The Petitioner's contention that no satisfactory proportionality review has been accomplished in this case addresses issues and repeats concerns that were considered by this court in Hopkinson v. State, 664 P.2d 43 (Wyo.1983), cert. denied, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). These issues were resolved in the prior case.

8. The assertion of Petitioner that execution by lethal injection, as provided for in Section 7–13–904(a), W.S.1977, constitutes cruel and unusual punishment is rejected as contrary to pertinent authority. Woolls v. McCotter, 798 F.2d 695 (5th Cir. 1986), cert. denied 478 U.S. 1031, 107 S.Ct. 15, 92 L.Ed.2d 769 (1986); Skillern v. Procunier, 751 F.2d 744 (5th Cir.1985); O'Bryan v. McKaskle, 729 F.2d 991 (5th Cir.1984); People v. Stewart, 123 Ill.2d 368, 123 Ill.Dec. 927, 528 N.E.2d 631 (1988), cert. denied — U.S. —, 109 S.Ct. 1356, 103 L.Ed.2d 824, reh. denied — U.S. —, 109 S.Ct. 1946, 104 L.Ed.2d 417 (1989); State v. Moen, 309 Or. 45, 786 P.2d 111 (1990); Ex parte Granviel, 561 S.W.2d 503 (Tex.Crim.App.1978).

9. The doctrine of res judicata is applicable in habeas corpus proceedings. Hopkinson v. State, 708 P.2d 46 (Wyo. 1985).

10. Section 1–27–125, W.S.1977 provides:

"Habeas corpus is not permissible to question the correctness of the action of a grand jury in finding a bill of indict-

ment, or a petit jury in the trial of a cause nor of a court or judge when acting within their jurisdiction and in a lawful manner."

11. The Petitioner has not demonstrated by his pleadings or his arguments that a court or judge acted without jurisdiction or in any unlawful manner in his case.

12. The Petition for Writ of Habeas Corpus should be denied.

IT THEREFORE IS ORDERED that the Petition for Writ of Habeas Corpus, filed herein on behalf of the Petitioner, Mark A. Hopkinson, on September 10, 1990, be, and it hereby is, denied.

> FOR THE COURT: *,**
> /s/ Richard V. Thomas
> RICHARD V. THOMAS
> Justice

CARDINE, Justice, dissenting.

Few of us have directly faced the awesome task of deciding whether a fellow human being should, three days hence, be killed by execution. I face that immediate decision, alone for the first time, as another of life's sobering experiences by which we find out more about who we are and how we feel about life and death, our relationships with others, power, justice, and the law. The legislative branch has decided as a matter of policy that the penalty for first degree murder in the State of Wyoming should be death. Statutes have been enacted specifying death by lethal injection as punishment. I am convinced now that this is an unwise policy. I am convinced also that, at this time in our history, these statutes are constitutional and, therefore, the law. I have taken an oath to support, obey and defend the constitution and will honor that oath. So, on to the law.

Hopkinson's second penalty phase trial to a jury was held on May 17, 1982. On February 28, 1985, this court, in habeas corpus and post-conviction relief proceedings in *State ex rel. Hopkinson v. District Court*, 696 P.2d 54 (Wyo.1985) *(Hopkinson IV)*, considered errors claimed to have occurred in that trial. Five years later, on September 19, 1990, the court considered whether proper, lawful instructions had been given that jury. In its order denying Mark Hopkinson's petition for writ of habeas corpus, the court stated that

> "[t]he Petitioner's earnest arguments that error occurred in the second penalty trial because of the instructions to the jury relating to mitigating circumstances in the light of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), and *McKoy v. North Carolina*, —— U.S. ——, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), fail of persuasion because the record in this case would not have justified reversal based upon the legal principle articulated in those cases, the cases are distinguishable, and, under the circumstances, the court is not required to, nor would it be appropriate, to apply those cases retrospectively. The issue of the instructions relating to mitigating circumstances has been before this court, *Hopkinson v. State*, 664 P.2d 43 (Wyo. 1983), *cert. denied* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983), and the United States District Court, *Hopkinson v. Shillinger*, 645 F.Supp. 374 (D.Wyo. 1986), *reh. denied* 648 F.Supp. 141 (D.Wyo.1986), and the instructions were approved." *Hopkinson v. State*, No. 90–218 (Order Denying Petition for Writ of Habeas Corpus) (Wyo. September 20, 1990).

That statement is simply incorrect. Never presented for our consideration before September 19, 1990, were the erroneous, defective instructions given the second penalty phase jury for ascertaining, listing and weighing aggravating and mitigating circumstances in arriving at its decision, whether punishment should be life or death. This question must now be considered for the first time. New law enunci-

---

* CARDINE, J. would grant the Petition for Writ of Habeas Corpus reserving the right to author an opinion to be appended at a later date to this Order Denying Petition for Writ of Habeas Corpus.

** MACY, J. would grant a stay of execution to provide more time to consider the Petition for Writ of Habeas Corpus filed September 10, 1990, reserving the right to author an opinion to be appended at a later date to this Order Denying Petition for Writ of Habeas Corpus.

ated in cases since decided by the United States Supreme Court must be applied retrospectively, as we agreed we would do in *Hopkinson IV*. It must be considered in this habeas corpus petition, for to do otherwise would be to concede that we are powerless to correct an erroneous application of law, an injustice, and would be contrary to our pronouncements in *Hopkinson IV*, wherein we said:

> "It is generally understood that the type post-conviction statute such as that employed in Wyoming, which is analogous to 28 U.S.C. § 2255 (1982), is now considered in view of the historical context in which it was adopted as simply providing in the sentencing court a remedy commensurate, to a large extent, *with that which has previously been available by habeas corpus* in the court of the district where the prisoner was confined. * * * [T]he principal purpose was to minimize the administrative difficulties encountered in habeas corpus hearings by *affording the same rights* in another and more convenient forum." 696 P.2d at 59 (emphasis added).

Concededly habeas corpus is an available and proper method of continued review in a case of this magnitude. Cases in which the punishment is death are different from any other case, and we should treat them differently when and however they come before us for review. The supreme court of Utah articulated the policy which should govern these proceedings when it stated:

> "[*State v. Wood*, 648 P.2d 71 (Utah 1982), *cert. denied* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982) and its progenitors] uphold the correct and well-established proposition that * * * in death penalty cases * * * we review all errors raised on appeal (whether or not objected to at trial or initially assigned as error) * * *." *State v. Tillman*, 750 P.2d 546, 552 (Utah 1987).

At pages 61 and 65 of *Hopkinson IV*, we affirmed a humanitarian, lawful and justice-oriented position that we would, for adequate reason in this case, reopen and consider anew *matters judicially decided;* we further agreed to consider anew intervening changes in the law and reverse our position if necessary. Thus, we stated:

> "Once a matter is judicially decided, it is finally decided *unless adequate reason is demonstrated to justify reopening and consideration anew.*

> \*    \*    \*    \*    \*    \*

> "Nor do we say that we need not consider some new authority with respect to the state of the law on a material question of law requiring a different decision. *An intervening change of the law* on constitutional questions in this state or other acceptable authority *will prompt us to reconsider and if required reverse a position previously taken. United States v. Nolan*, 571 F.2d 528 (10th Cir. 1978)." 696 P.2d at 61, 65 (emphasis added).

The question we here present is whether the death penalty jury was instructed correctly in the law for a proper determination and weighing of aggravating and mitigating circumstances in arriving at a penalty. The jury was instructed as follows. Instruction No. 3 states in part:

> "Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. *Your verdict must be unanimous.*" (emphasis added)

Instruction No. 6 states:

> "Aggravating circumstances must be found beyond a reasonable doubt.

> "Mitigating circumstances are not required to be proven beyond a reasonable doubt."

Also in the instructions were a list of potential aggravating and mitigating circumstances. The list of potential mitigating circumstances allowed jurors to take into account any other circumstances deemed to be mitigating. These were the only instructions speaking to the procedure to find mitigating circumstances for use in the weighing process.

There was new law pronounced by the United States Supreme Court in 1988, more than three years after this court's decision in *Hopkinson IV*, denying Hopkinson's habeas corpus and post-conviction relief petitions. In *Mills v. Maryland*, 486 U.S. 367,

108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the United States Supreme Court reversed a death sentence because the jury instructions were unclear as to how the jury should give consideration to mitigating circumstances. In *Mills*, the defendant was convicted of first degree murder of his prison cell mate. The sentencing jury was presented with a verdict form which asked them to mark a list of aggravating and mitigating circumstances, either yes or no. No instruction was given indicating what the jury should do if some, but not all, of the jurors thought a particular mitigating circumstance was present. The jurors marked all the listed mitigating factors in the negative and determined that the defendant should be sentenced to death. 108 S.Ct. at 1863. The United States Supreme Court stated that the instructions failed to clearly state that the jury was not required to unanimously agree upon the existence of a mitigating factor before the jury or any member of the jury might consider it in determining what sentence should be imposed on the defendant. 108 S.Ct. at 1867–68. The Court hypothesized that if a unanimous finding of a mitigating circumstance were required, a single juror's dissention could force the jury to unwillingly sentence someone to death. *Id.* at 1870. The Court stated:

> "Under our cases, the sentencer must be permitted to consider all mitigating evidence. The possibility that a single juror could block such consideration, and consequently require the jury to impose the death penalty, is one we dare not risk." *Id.*

Allowing a "holdout" juror to prevent the other jurors from considering mitigating evidence violates the principle that a sentencer must not be precluded from giving effect to all mitigating evidence. *McKoy v. North Carolina*, — U.S. —, 110 S.Ct. 1227, 1231, 108 L.Ed.2d 369 (1990). The State may not limit a sentencer's consideration of mitigating circumstances merely because it places the same limitation on consideration of aggravating circumstances. *Id.* *"Unless we can rule out the substantial possibility that the jury may have rested its verdict on the 'improper'*

*ground, we must remand for resentencing."* *Mills*, 108 S.Ct. at 1867 (emphasis added).

In the second *Hopkinson* sentencing trial, the jurors were understandably confused by the given instructions and whether they must be unanimous in deciding upon mitigating circumstances. During deliberations, the court received a note from the jury room which asked in part:

> "2. Does the jury *have to be unanimous* as to findings of fact for each aggravating or *mitigating circumstance?*
>
> "NOTE:
>
> "We recognize a death verdict requires a unanimous vote, and only one aggravating circumstance is required; is it possible for different jurors to feel strongly about different circumstances as the basis for their decision?" (emphasis added)

The court conferred with counsel on these questions. Hopkinson's counsel was initially troubled by the court's suggestion that the jury be advised that it must be unanimous in its aggravating and mitigating circumstance determinations. At this time the United States Supreme Court had not enunciated the later law of the *Mills* case. It should have been apparent, however, that matters which convict require unanimity, and failure to convict can result from the vote of one juror and that aggravating and mitigating circumstances should be dealt with in the same way. The court, nevertheless, advised the jury only that:

> "Your verdict as previously instructed must be unanimous."

Confusion on the jury's part was not alleviated by the court's cursory reply.

The jury's confusion is further evidenced by the verdict form. In a space provided for listing other mitigating factors the jury made the following handwritten notations:

> "8. The torture of Jeff Green may not have been ordered by Mark Hopkinson[.]
>
>            "Yes ___ No  x
>
> "9. Actions of Mark Hopkinson helped save the life of a prison guard[.]
>
>            "Yes  x  No ___ "

The fact that the jurors listed "8." in the mitigating circumstances section of the verdict form indicates that they considered it as a mitigating circumstance, voted on it, and that some individual jurors favored weighing it in their sentencing deliberation. It is apparent that mitigating circumstance "8." is checked "No" because the jury was unable to reach unanimity on this item. The torture of Jeff Green was critical to the death penalty finding—it was the difference between the Vehar case and the Green case. If some jurors would not have found Hopkinson responsible for the torture of Green, it is doubtful the death penalty would have been given. It is likely the penalty would have been life imprisonment as in the Vehar case. This uncertainty at least creates the barrier which prevents "rul[ing] out the substantial possibility that the jury may have rested its verdict on [an] improper ground." *Mills,* 108 S.Ct. at 1867.

The current version of the statute under which Hopkinson's jury was instructed reflects the *Mills* decision. Wyoming Statute 6-2-102(e) (1977 & Cum.Supp.1989) states in part:

"(e) The death penalty shall not be imposed unless at least one (1) of the aggravating circumstances set forth in subsection (h) of this section is found. In nonjury cases the judge shall make such designation. If the jury cannot, within a reasonable time, agree on the punishment to be imposed, the judge shall impose a life sentence. *The jury, if its verdict is a sentence of death, shall designate in writing signed by the foreman of the jury:*

*"(i) The aggravating circumstance or circumstances which it unanimously found beyond a reasonable doubt;*

*"(ii) The mitigating circumstance or circumstances which it unanimously found by a preponderance of the evidence; and*

*"(iii) The mitigating circumstance or circumstances which any individual juror found by a preponderance of the evidence."* (emphasis added).

The emphasized portion was added in 1989. 1989 Wyo.Sess.Laws, Chap. 171, § 1. The version of the statute in effect at the time of the second sentencing phase simply stated:

"(e) The death penalty shall not be imposed unless at least one (1) of the aggravating circumstances set forth in subsection (h) of this section is found. The jury, if its verdict is a recommendation of death, shall designate in writing signed by the foreman of the jury the aggravating circumstance or circumstances which it found beyond a reasonable doubt. In nonjury cases the judge shall make such designation. If the jury cannot, within a reasonable time, agree on the punishment to be imposed, the judge shall impose a life sentence." 1977 Wyo.Sess. Laws, Chap. 122, § 1. *See* W.S. 6-4-102 (December 1977 pamphlet).

The legislature, by its amendment, acknowledged the unfairness and impropriety of the law and corrected the problem.

This court's earlier Hopkinson pronouncements require application of the *Mills* case to this case as does federal constitutional law as well. New rules are to be applied in habeas corpus proceedings when they are "new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding." *Sawyer v. Smith,* —— U.S. ——, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990). Certainly, the *Mills–McKoy* rule falls into this category.

I would stay the execution and consider the matter further in light of W.S. 6-2-103(e) (1977 & Cum.Supp.1990). This statute states that the Wyoming Supreme Court is granted three options in reviewing death penalty sentences. The court may either affirm the sentence of the death, set the sentence aside and impose a sentence of life imprisonment, or set the sentence aside and remand the case for resentencing. W.S. 6-2-103(e)(i–iii).

This is an important case. It is a milestone in the history of our state and in our legal jurisprudence. If an execution occurs, it will be the first in 25 years. I take license to conclude this dissent by saying

some things simply because they need saying. I trust they will not be lost on our legislature which ought to consider whether an enlightened society should continue punishment by killing its citizens.

Our system of justice is fallible, as are all human endeavors. A recent study by Professors Bedau of Tufts University and Radelet of the University of Florida entitled *Miscarriages of Justice in Potentially Capital Cases* (Rv'd draft 1986) presented vignettes of more than 300 cases in which Americans in this century were convicted of capital crimes, in many instances sentenced to death and later found to be innocent. We know that innocent persons in the past have been executed. To justify continued acceptance of the death penalty as punishment, we must be prepared to say that the cost to society of executing some innocent people is outweighed by the benefit that accrues from death by execution. We are told that the death penalty deters others from commission of the crime of murder. But we also know that the incidence of homicide in the United States is ten times greater than Japan, eight times greater than West Germany, and greater by far than the homicide rate in other developed, industrialized, modern nations having no death penalty punishment. We know also that of the approximately 20 states out of the 50 United States that have abolished the death penalty there is no evidence that the incidence of homicide has increased or that it is greater than the homicide rate in those states that still retain the death penalty. Truly there are other factors that enter into the horrendous United States' crime rate, but surely one must at least seriously question whether retention of the death penalty results in any benefit to the citizens of our state.

The considerable debate over the efficacy of the death penalty is confused and often lost when proponents of the death penalty focus upon the victim and the victim's family, and opponents of the death penalty focus upon the convicted person and his family. To arrive at a rational decision, our focus ought to be on the death penalty itself. Every person who ever walked or will ever walk on the face of this earth is unique. There will never be another like that person. Life is precious. It is a gift that is so unique and wonderful that no mortal man should cheapen it by taking it from another. It has been said that killing begets killing. The more we kill, the more conditioned we become to killing until we are so conditioned that no one cares anymore. Someday every court in our land will recognize punishment by killing as cruel and unusual, but today we are not prepared to accept what someday will come to pass.

In this case I urge that this court grant a stay of execution, grant the writ of habeas corpus, schedule a hearing at which Hopkinson may present any additional material he chooses, and then complete our study and review of all the serious questions raised by this case.