**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 00-50418

MIGUEL A. RICHARDSON,

                                                    Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT

OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

                                                    Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Texas
(5:98-CV-775)

January 23, 2001

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Petitioner, Miguel Richardson ("Richardson"), appeals the district court's denial of a

certificate of appealability ("COA"). Because we find that the district court did not err in denying

the COA, we affirm the ruling and vacate the stay of execution.

FACTUAL & PROCEDURAL HISTORY

On September 18, 1981, Richardson was convicted of capital murder under Texas Penal Code

Ann. § 19.03 and sentenced to death for the March 31, 1979, murder of John G. Ebbert, a security

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

guard at a Holiday Inn in San Antonio, Texas. During voir dire, the state trial court excused *sua sponte* a prospective juror, William Noble ("Noble"), who stated that he had already prejudged the case and that he was opposed to the death penalty. At the penalty phase of Richardson's trial, Dr. Robert Rast, an expert witness and psychiatrist for the State, testified that although he had not examined Richardson, Richardson was a "threat to society" and a "psychopath." The State notified Dr. Rast that it would call him as a witness one day before he gave his testimony, and it promptly notified Richardson regarding the proposed testimony.

On June 1, 1994, the Texas Court of Criminal Appeals ("CCA") affirmed Richardson's conviction and death sentence, and it denied Richardson's motion for rehearing on September 21, 1994. Richardson filed a petition for a writ of habeas corpus in the 175th District Court of Bexar County. That court conducted a four-day evidentiary hearing on April 29 through May 2, 1997, in which Richardson presented evidence of a childhood history of sexual and physical abuse and evidence regarding the absence of written guidelines and protocols regulating lethal injections in Texas. Richardson's petition, however, was denied.

On October 8, 1998, Richardson filed a petition for COA in federal district court. The district court denied relief on March 28, 2000. Richardson filed a Motion to Alter and Amend the Judgment of the District Court on April 11, 2000, which was denied on April 16, 2000. Richardson now appeals.

## DISCUSSION

This Court may not issue a COA "unless the State court's adjudication of the claim resulted in 'a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court . . . ; or resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Knox v. Johnson, No. 99-41068, slip op. at 5280 (5th Cir. filed August 21, 2000) (citing 28 U.S.C. § 2254(d)).

The Supreme Court recently announced in Slack v. McDaniel somewhat different standards for the issuance of a COA under AEDPA.  It noted that "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  120 S. Ct. 1595, 1603-04 (2000).

Moreover, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  In addition, this Court will defer to a state court's factual findings "unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.'" Knox v. Johnson, No. 99-41068, slip op. at 5280 (citing Chambers v. Johnson, 218 F.3d 360, 363 (5th Cir. 2000)).


I.      Whether the trial court violated Richardson's Fifth and Sixth Amendment Rights by dismissing a venireperson

Richardson argues that the state trial court erred when it excluded Noble, whom Richardson argues qualifies under Witherspoon v. Illinois because he expressed opposition to the death penalty. 391 U.S. 510, 521-23 (1968).  Richardson also argues that the CCA erred when it held that the trial court harmlessly erred when it excused Noble.  The CCA determined that although the trial court

asked Noble whether he had formed an opinion regarding Richardson's guilt or innocence, the trial court did not ask him whether that opinion would influence his verdict as required by Tex. Code Crim. Proc. 35.16(a)(10).

Contrary to Richardson's assertion that Noble was excused because he opposed the death penalty in violation of Witherspoon, Noble was in fact excused *sua sponte* by the trial court during voir dire because the court believed that he had already prejudged the case. Moreover, although Richardson notes that a Witherspoon error may never be harmless error,[1] the CCA stated that Noble's dismissal was error because Texas law holds that a juror must be asked whether his conclusion will influence his verdict. Richardson v. State, 744 S.W.2d 65, 68 (Tex.Cr.App. 1987). The CCA's holding, therefore, regarding error had nothing to do with a Witherspoon violation.

The CCA, however, concluded that this error was harmless because Richardson had not shown that he was harmed by the trial court's action since the State had not used all of its peremptory challenges. Id. at 68-69. Thus, we affirm the trial court's ruling on this issue since reasonable jurists would not find the district court's assessment of the alleged Witherspoon claim debatable or wrong.

II.     Whether Dr. Rast's testimony violated Richardson's Fifth and Sixth Amendment Rights

Richardson's main argument for this issue is that Gardner v. Florida, 430 U.S. 349 (1977), applies to this case and that Gray v. Netherland, 518 U.S. 152 (1996), is inapplicable.[2] Dr. Rast testified in part that Richardson was a "threat to society" and a "psychopath," yet he candidly

---

[1]Richardson cites Gray v. Mississippi, 481 U.S. 648, 668 (1987).

[2]Richardson complains that the state trial court erred in permitting Dr. Rast, a "surprise witness," to testify, thereby depriving him of effective assistance of counsel and violating his due process rights. Upon review of the transcript of the evidentiary hearing conducted by the court on this issue, we find no error and decline to elaborate further.

admitted that he had not examined him. Richardson asserts that Gardner, in which the Court held that the trial court denied petitioner's due process rights because it sentenced him "to death on the basis of information which he had no opportunity to deny or explain," is controlling precedent.

Gardner is distinguishable from the instant case because the confidential portions of the presentence report remained undisclosed to all parties in that case. Moreover, the defense received no opportunity at trial to examine the confidential report. Here, however, although Richardson was not aware of Dr. Rast's testimony until the day before he testified, he was afforded a lengthy opportunity to cross-examine Dr. Rast.

More importantly, this case is governed by Gray v. Netherland which involved the testimony of two additional witnesses, a medical examiner and a police officer, regarding additional murders the Petitioner had allegedly committed. Like Richardson, the Petitioner in Gray v. Netherland received only a day's notice of the testimony, yet the Court noted that there is "no general constitutional right to discovery in a criminal case. . . ." 518 U.S. at 168-171. It held that Petitioner's notice of evidence claim regarding the two witnesses was barred by Teague v. Lane, 489 U.S. 288 (1989), because it sought "retroactive application of a new rule." Id.

Richardson contends that Gray is inapplicable to his case because the evidence at issue involved "cumulative witnesses" instead of a witness who is the State's sole expert on future dangerousness. This argument is not persuasive given that the principle behind Gray and the instant case is the same: notice of evidence claims are Teague- barred. It matters little how many witnesses constitute the evidence. Moreover, although Richardson asserts that Gardner is applicable, the Court in Gray distinguished that case by noting that although "Gardner literally had no opportunity to even see the confidential information . . . [p]etitioner in the present case, on the other hand, had the opportunity to hear the testimony of Officer Slezak and Dr. Presswalla in open court, and to cross-

examine them." Gray, 518 U.S. at 168-69. Here, as in Gray, Richardson was afforded the opportunity of hearing the testimony of Dr. Rast and cross-examining him. The law is, therefore, clear that the district court did not err when it granted relief on this issue and reasonable jurists would not find the district court's assessment of this issue debatable or wrong.[3]

III.     Whether the trial court erred by not giving a Penry instruction even though mitigating evidence regarding childhood abuse was not presented

Although Richardson admits that he did not present mitigating evidence regarding childhood sexual and physical abuse at trial because of his fear that a Penry-type instruction would not be given, he argues that because he presented such evidence at the state habeas corpus hearing, this Court should hold that the district court erred by not giving such an instruction. The district court extensively examined this issue and found that Richardson's claim lacked merit.

We agree with the district court's assessment because Richardson cites no precedent stating that a trial judge erred by not giving a Penry-type instruction when there was nothing about which to instruct. See Boyd v. Johnson, 167 F.3d 907, 912 (5th Cir. 1999) ("A petitioner cannot base a Penry claim on evidence that could have been but was not proffered at trial."); see also Woods v. Johnson, 75 F.3d 1017, 1033 (5th Cir. 1996) ("We have consistently held that a Penry v. Lynaugh, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), claim may not be predicated on 'evidence' which was not offered or tendered (conditionally or otherwise) at trial."). Hence, the trial court did

---

[3]Richardson also argues that Estelle v. Smith, 451 U.S. 454 (1981) and Gholson v. Estelle, 675 F.3d 784 (5th Cir. 1982) are instructive. Although these cases involved the admission of testimony of "surprise witnesses," these witnesses were psychiatrists who had previously interviewed the defendants and who later testified about the future dangerousness of the defendants based on their examinations. In both cases, however, the courts focused on the lack of an attorney during the examination as the reason for their holdings. Here, there is no such issue, as Dr. Rast admitted that he had not interviewed Richardson.

not err in denying a COA on this issue.

IV.     Whether the lack of written guidelines and protocols for executions by lethal injection in Texas violates Richardson's Eighth Amendment rights

Richardson creatively argues that the lack of written guidelines and protocols to administer executions by lethal injection in Texas violates his Eighth Amendment rights against cruel and unusual punishment.    Richardson presented the testimony of two experts, a criminologist and anesthesiologist/pharmacologist, at the state habeas corpus hearing.  They testified regarding the effects of extreme pain and suffering as a result of lethal injection and specific instances which resulted in extreme pain and suffering involving lethal injection, respectively.  However, as the district court points out, this Court has upheld the use of lethal injection as a method of execution.  See Woolls v. McCotter, 798 F.2d 695, 697 (5th Cir. 1986); see also Kelly v. Lynaugh, 862 F.2d 1126, 1135 (5th Cir. 1988) (stating that this Court has already rejected the argument that lethal injection is cruel and unusual punishment even when administered by an unqualified person).  Moreover, as the district court further notes, Richardson is in essence petitioning for the application of a new rule which is barred by Teague.

We also agree with the district court's assessment that the expert testimony given by Drs. Edward Brunner and Deborah Denno at the state habeas corpus hearing is not helpful on this issue. Although the district court emphasizes that the experts were unable to testify how lethal injections are administered in Texas, we agree with its finding that the experts failed to show how the lack of written procedures results in extreme pain and suffering.

For example, Dr. Denno, the criminologist, testified that there have been 11 botched executions out of 115 total executions in Texas by lethal injection.  Dr. Denno admitted that seven

out of these eleven botched executions resulted not because of a lack of written procedures, but because the officials took care to find a suitable vein on individuals who were long-time intravenous drug users and who had much vein-scarring. Accordingly, there are only four out of a total of 115 executions administered by lethal injection which may be deemed "botched" according to Dr. Denno. It is unclear whether these failed efforts occurred because of a lack of written procedures or because of human error. Richardson's evidence is insufficient to show that Texas violates individuals' Eighth Amendment rights because of a lack of written guidelines in administering executions by lethal injection.

Dr. Brunner was also unable to explain the link between written guidelines and decreased pain and suffering during lethal injection. In addition, he noted that there is nothing to indicate that Texas is doing anything incorrectly in administering lethal injection. Thus, the district court did not err by denying a COA for this issue.

## CONCLUSION

Because we find that Richardson's Fifth and Sixth Amendment rights were not violated when the state trial court excused venireperson Noble and when Dr. Rast testified during the penalty phase of the trial, Richardson's Eighth Amendment rights were not violated by a lack of written guidelines and protocols for executions by lethal injection in Texas, and the state trial court did not err by not giving a Penry instruction, we affirm the district court's denial of a COA and vacate the stay of execution.

AFFIRMED. STAY OF EXECUTION VACATED.