REVISED, JULY 12, 2000

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-40896
_____


TONY NEYSHEA CHAMBERS,

                    Petitioner-Appellant,

                    v.

        GARY L. JOHNSON, DIRECTOR,
    TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
          INSTITUTIONAL DIVISION,

                    Respondent-Appellee.


_____

    Appeal From the United States District Court
        For the Eastern District of Texas
_____
            June 20, 2000


Before HIGGINBOTHAM, DAVIS and BENAVIDES, Circuit Judges.

DAVIS, Circuit Judge:

    Tony Neyshea Chambers ("Chambers") was convicted of capital murder and sentenced to death by the State of Texas.  In 1995, Chambers filed an application for a federal writ of habeas corpus, but it was dismissed without prejudice for him to exhaust available state remedies.  After his state habeas petition was denied in 1998, Chambers again filed a petition for federal habeas relief.

1

In accordance with a magistrate judge's recommendation, the district court denied Chambers's petition. Thereafter, the district court also denied Chambers's application for a Certificate of Appealability ("COA") to authorize an appeal, and Chambers is now seeking a COA from this Court. For the reasons stated below, we deny this request.

**I**

In 1990, Chambers attended a middle school basketball game, and several witnesses saw him leave with an eleven year old girl, Carenthia Bailey ("Bailey"). When Bailey did not return home that evening, two of these witnesses reported last seeing her with Chambers. Later that evening, these witnesses saw Chambers and inquired about Bailey. Chambers responded that he had "got the little bitch" and then ran away. The witnesses attempted to catch him, but he was able to elude capture. Chambers called the police and told them that unknown persons were trying to harm him. When the police arrived, Chambers denied even knowing Bailey.

After learning that he was wanted for questioning in Bailey's disappearance, Chambers left a telephone message with an officer at the police station, stating that he "did not want to get in trouble if this girl came up hurt." He later told the officer heading the investigation that he had only briefly spoken with Bailey on his way out of the basketball game. Chambers repeated this story in a later telephone conversation and in an informal meeting with the

2

officer at a restaurant.  Shortly after this meeting, Chambers admitted leaving the area of the gym in the same direction as Bailey, but claimed that their paths diverged soon after leaving the game.

The following day, Bailey's body was discovered in a wooded area near the middle school gym.  The crime scene showed evidence of a sexual assault, and an autopsy uncovered abdominal wounds and evidence of sexual assault prior to death.  The police discovered Bailey's body while Chambers was being voluntarily questioned at the local police station.  When confronted with news of the body's discovery, Chambers became emotional and stated his remorse for killing Bailey.  Chambers gave an extensive videotaped confession after the police advised him of his *Miranda* rights.  He also signed a written statement acknowledging that he had been given his *Miranda* warnings and admitting to leaving the basketball game with Bailey, having sex with her in the woods near the gym, and choking her for about three minutes.  He claimed, however, that he left her alive.  Later that night, Chambers gave a more complete statement after again acknowledging he had received and understood his *Miranda* warnings.  In this statement, Chambers admitted to choking Bailey during intercourse, tying her to a tree with her shoe laces, choking her while tied, untying her, and puncturing her stomach with a scalpel and protractor.  This confession contained details, such as the cut design left on Bailey's abdomen, that were not

3

publicly known. Thereafter, Chambers told detectives where he had disposed of the scalpel and protractor, and the detectives, with Chambers's help, were able to recover both items. Possibly due to a recent rain, the police found no fingerprints or blood on these weapons.

Chambers soon partially recanted his confession, and stated that it was made while he was frightened and nervous. Chambers asserted that he did not believe he had killed Bailey and claimed for the first time that an acquaintance known as "Duck," later identified as Bryan Brooks ("Brooks"), had been watching Chambers and Bailey have sex. According to Chambers, Brooks later passed a scalpel to Chambers through an intermediary, William Pannell ("Pannell"), for Chambers to throw away. Chambers then stated that he had choked Bailey, but left her alive in the woods and theorized that Brooks had actually killed her. Following this statement, Brooks was interviewed and gave a written statement claiming that he was not around the middle school on the day of the murder. Soon thereafter, a jailor overheard Chambers tell another inmate that "you know that little girl that was killed; that was me."

At his 1991 trial, Chambers's numerous statements were presented to the jury. In addition, the State's medical examiner and numerous other witnesses gave testimony supporting Chambers's original murder confessions. Moreover, Chambers's friend, Brooks, testified consistent with his statement to the police--that he had

4

been elsewhere during the crime.  This testimony was corroborated by other witnesses.

**II**

This Court may issue a COA only if Chambers has made a substantial showing of the denial of a constitutional right.  <u>See</u> 28 U.S.C. § 2253(c)(2) (2000).  Such a showing requires the petitioner to demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further.  <u>See</u> <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394 (1983); <u>Tucker v. Johnson</u>, 115 F.3d 276 (5th Cir. 1997), as corrected on reh'g, (July 2, 1997).

The applicable standard for reviewing the merits of Chambers's § 2254 claims is set forth in the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA")[1].  Chambers argues that because he filed a habeas petition in 1995, which was later dismissed for failure to exhaust state court remedies, we should follow the law as it existed in 1995.  We disagree.  Chambers's petition is

---

[1]The revised section 2254(d) states that writs of habeas corpus should not be granted in these cases unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d) (2000).

considered under the law that was in effect at the time of his 1998 filing. We do not consider an action that has been dismissed without prejudice as a pending case. See Graham v. Johnson, 168 F.3d 762, 776-780 (5th Cir. 1999).

Chambers's appeal challenges the district court's denial of a single claim that the State of Texas ("State") knowingly used his materially false or involuntary confessions to obtain a conviction in violation of his due process rights under the Fifth and Fourteenth Amendments. According to the statutory standard, Chambers must make a substantial showing that the state court's decision to admit his confessions was an "unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1). The Supreme Court has recently stated that a decision is contrary to *clearly established federal law* "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, --- U.S. ---, 120 S. Ct. 1495, 2000 WL 385369, at *28 (2000). The Court stated that § 2254(d)(1)'s *unreasonable application* standard, allows a writ to issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 120 S. Ct at ---, 2000 WL 385369,

6

at *28.  Moreover, factual findings are presumed to be correct, <u>see</u> 28 U.S.C. § 2254(e)(1), and we will give deference to the state court's findings unless they were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  Id. § 2254(d)(2); <u>see also</u>, <u>Hill v. Johnson</u>, --- F.3d ---, 2000 WL 426219, *2 (5th Cir. Apr. 20, 2000).  Because Chambers's claims fail to meet either of these standards, we agree with the district court that Chambers has failed to make a substantial showing of the denial of a constitutional right, and, accordingly, we deny issuance of a COA.

## III

Chambers argues that the district court erred in rejecting his claim that the state knowingly introduced false testimony.  More particularly, he contends the prosecution should have known his confessions were involuntary and false because they were obtained through the use of coercive tactics.  He contends further that the prosecution's knowledge of the falsity of his confession was made even more apparent by the inconsistency between the confession and the physical evidence.

The trial court's review of the record led it to conclude that Chambers had not introduced sufficient evidence to support his claim that the prosecution knowingly introduced false testimony. The district court held that the state trial court's findings were

7

not unreasonable and were fully supported by the record.

A.

To obtain relief on his claim that the state knowingly introduced false testimony, Chambers bears the burden of establishing that the evidence was false, that the false testimony was material, and that the prosecution offered the testimony knowing it to be false. Giglio v. United States, 405 U.S. 150, 153-154 (1963); Schlang v. Heard, 691 F.2d 796, 799 (5th Cir. 1982).

Chambers challenged the voluntariness and truthfulness of his confessions in state court at a lengthy pretrial suppression hearing, on direct appeal, and in an application for state habeas relief. After the suppression hearing, the trial court entered findings of fact and conclusions of law that Chambers's confessions were knowingly and voluntarily made. On direct appeal, the Texas Court of Criminal Appeals gave a detailed explanation of the circumstances of Chambers's confession and its basis for rejecting Chambers's arguments that his confessions were involuntary and false. Furthermore, the state habeas trial court entered detailed findings rejecting these same arguments.[2] In support of his state

_____

[2]The state habeas trial court entered the following findings of fact and conclusions of law relevant to these allegations:

FINDINGS OF FACT:

3.    [Chambers] was not under arrest when he gave

8

habeas petition, Chambers proffered the affidavits of two forensic

pathologists critical of Dr. Gonzalez, the State's medical expert

---

his first statement to police.

4.  [Chambers's] confessions given after his arrest were freely, intelligently, knowingly, and voluntarily given.

5.  [Chambers's] confessions after he was given his *Miranda* and statutory warning were (sic) not tainted by any prior statement and were freely, intelligently, knowingly, and voluntarily given.

7.  There is no credible evidence that the legally obtained confessions were obtained by a police "penchant" for illegal confessions.

8.  There is no credible evidence that the police interrogation induced a false confession.

9.  The confessions['] admissibility was considered and found to be voluntarily given on direct appeal.

CONCLUSIONS OF LAW:

2.  The police interrogation techniques did not render [Chambers's] voluntary statement involuntary.

5.  [Chambers]'s confessions were freely, intelligently, knowingly, and voluntarily made by [Chambers's] after a knowing, intelligent, and voluntary waiver of his rights.

6.  [Chambers]'s confessions were legally obtained after a free, knowing, intelligent, and voluntary waiver of [Chambers]'s rights.

7.  The police activity in prior cases was not a cause-in-fact of any of [Chambers]'s confessions.

9

who examined Bailey's body and testified at trial. While these affidavits may generally support a conclusion that Gonzalez did not utilize the most advanced techniques for retrieving, documenting, or preserving forensic evidence, the state habeas court was entitled to find that they were insufficient to cast enough doubt on Chambers's confessions to show they were materially untrue. The federal district court correctly held that the state courts' rejections of Chambers's claims that his confessions were materially false did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence, 28 U.S.C. § 2254(d).

B.

Even if Chambers had shown that his confessions were materially false, he must also prove that Texas prosecutors knew or should have known of their falsity in order to obtain habeas relief from this Court. See Blackmon v. Scott, 22 F.3d 560, 565 (5th Cir. 1994). The facts surrounding Bailey's disappearance — which are largely undisputed — belie this claim: (1) Chambers had last been seen with Bailey before her disappearance; (2) Chambers contacted police and stated that if Bailey "came up hurt," he was not involved; (3) when a police investigator informed him that Bailey had been found dead, he blurted out that he did not mean to hurt her; (4) after Chambers gave the second written statement, he took

10

the police officers to the location where he disposed of the scalpel; (5) until that time, the police knew neither what instrument was used in the murder nor where it was located; (6) Chambers never denied going into the woods where Bailey's body was found and having intercourse with her; (7) after Chambers had given at least two statements in which he did not mention that anyone else was in the woods with him and Bailey, he came up with a different version; and (8) this version was contrary to witness accounts concerning the whereabouts of Brooks, Chambers's friend who he attempted to implicate in the crime. Because the prosecutors were aware of these facts, Chambers's claim that they knew or should have known that his confessions were untrue is very dubious.

In support of this claim, Chambers argues that investigators purposefully used an interrogator, Officer Alexander, and interrogation tactics that had recently been shown to elicit a false confession from another suspect. In addition, he argues that another false confession Officer Alexander obtained several years before he questioned Chambers should have put the officers on heightened notice that Chambers's confessions were materially untrue. However, as previously noted, the Texas Court of Criminal Appeals found that Officer Alexander had minimal involvement in questioning Chambers. Moreover, as stated above, the state courts have found that the officers used no coercive tactics in

11

questioning Chambers.  <u>See generally</u> <u>Pemberton v. Collins</u>, 991 F.2d 1218, 1225 (5th Cir.1993).  These state court rulings are not unreasonable in light of the evidence.


**IV**

 For the above reasons, we conclude that Chambers has failed to make a substantial showing of the denial of a constitutional right. We therefore deny Chambers's motion for a Certificate of Appealability.