IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-31473
_____

JAMES WALTZ,

Petitioner-Appellant,

versus

WARDEN WADE CORRECTIONAL CENTER,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
UDC No. 99-CV-1870
_____

February 8, 2002

Before GARWOOD, JOLLY, and DAVIS, Circuit Judges.

PER CURIAM:[*]

James Waltz, a state prisoner, pleaded guilty to manslaughter in accordance with an eleventh-hour plea agreement with the State of Louisiana. During the plea hearing, Waltz received the required warnings and was informed that the court would impose a sentence of forty years in prison. He agreed to the terms of the plea agreement and asserted that he had not been promised anything outside the agreement. In his state petition for habeas corpus, however, Waltz contended that his guilty plea was not knowing and

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

voluntary because his attorney, Gregory Caver, induced him to accept the agreement by promising Waltz that he would have to serve only five years in prison. Finding insufficient evidence to show that Waltz's attorney had made such a promise before Waltz pleaded guilty, the state court denied relief.

Waltz asserted the same claims in his federal habeas petition, relying in part on the Louisiana Supreme Court's intervening decision to sanction Caver for a laundry-list of professional misconduct including one charge relating to Waltz's guilty plea. The district court denied relief. We granted a Certificate of Appealability to decide whether Caver induced Waltz to plead guilty by promising him a five-year prison sentence, and we now affirm the judgment of the district court.

I

In 1994, the state charged Waltz with second-degree murder in connection with the April 1994 death of Dennis Lines. Shortly before his trial in state court was scheduled to begin, Waltz struck a deal with the state and agreed to plead guilty to manslaughter. As Waltz concedes, the trial judge explained the consequences of a guilty plea and informed Waltz that he would receive a sentence of forty years in prison if he accepted the plea agreement. Waltz voluntarily waived his right to a jury trial and agreed to the forty-year prison term. Most relevant to the present question, Waltz also asserted under oath that he had not been promised "anything whatsoever that has not been said on the record

2

here today." The trial court then sentenced him to forty years in prison.

In a later petition for post-conviction relief in state court, Waltz asserted that he accepted the plea agreement only because his attorney, Gregory Caver, promised that he would have to serve only five years of his forty-year prison sentence.[1] At a February 1998 evidentiary hearing conducted in state court, several of Waltz's sisters testified on his behalf. According to his sisters, Caver told them that the state had offered Waltz a plea bargain and that Caver would obtain a pardon for Waltz to reduce the sentence to five years if they provided him with more money. Waltz testified that, because he was not permitted to speak with his sisters during the negotiations, they signaled their approval of the arrangement by nodding their heads.[2] Based on this testimony, Waltz argued that his guilty plea was based on Caver's promise to have his sentenced reduced to five years.

The state habeas court, however, did not find Waltz's account to be credible. The court relied instead on the prosecuting attorney's testimony that he and Caver had not discussed early

---

[1] Caver allegedly assured Waltz that the prosecutor had agreed to commute Waltz's sentence after five years because of his medical condition. Caver did not testify at the hearing, however, because he could not be located.

[2] Waltz also testified that Caver coached him during the plea colloquy by signaling how he should answer the judge's questions. The prosecuting attorney, however, testified that he did not notice any such signals.

release or any other form of commutation of Waltz's sentence.  The judge who took Waltz's guilty plea similarly testified that he was unaware of any promise to release Waltz early.  The state habeas court therefore denied Waltz's request for relief because his guilty plea was voluntary, knowing, and intelligent and was not tainted by a false promise by Caver.  The state appellate court affirmed in July 1998, and the Louisiana Supreme Court denied Waltz's petition for review in September 1999.

In June 1999, the Louisiana Supreme Court suspended Caver for a minimum of five years based on sixteen instances of professional misconduct, including one count related to Waltz.[3]  Specifically, the court found:

> In 1994, James Waltz retained respondent to represent him in a criminal matter. Subsequently, Mr. Waltz pled guilty to manslaughter after respondent promised him he would receive a two-year sentence. Instead, Mr. Waltz received a forty-year sentence. Respondent promised to file an appeal and was paid $500 to do so. Respondent failed to file the appeal, communicate with his client, and account for and return the unearned portion of the legal fee.

In re Caver, 733 So.2d 1208, 1209 (La. 1999).

In his federal habeas petition, Waltz again argued that his guilty plea was induced by Caver's promise that he would not have

---

[3] Although he did not testify during the disciplinary proceedings, Caver apparently admitted to harming forty-nine clients.

4

to serve more than five years of his sentence.[4] After reviewing the record of the state habeas proceedings, the magistrate judge concluded that the "State court's resolution of the facts in light of the evidence presented was entirely reasonable" and was "based largely upon credibility calls that are fully supported by the inconsistencies in the testimony." The district court accepted the magistrate judge's recommendation and denied Waltz's petition. Waltz then requested a Certificate of Appealability from this Court. We found that he had "made a substantial showing of the denial of a constitutional right" and granted a COA "with respect to the issue whether Caver promised Waltz that he would receive a five-year prison term as part of the plea bargain, and whether the promise induced Waltz to plead guilty."

II

Under the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may not issue a writ of habeas corpus concerning "any claim that was adjudicated on the merits in State court proceedings" unless the state court's adjudication of that claim (1) unreasonably applied clearly established federal law or (2) was "based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 405-06 (2000); see

---

[4] Waltz's federal petition also alleged that the trial judge impermissibly participated in plea negotiations. The district court rejected this contention, and we denied Waltz's request for a Certificate of Appealability as to the issue.

5

also <u>Chambers v. Johnson</u>, 218 F.3d 360, 363 (5th Cir. 2000).

Waltz makes arguments under each prong of the statute, but we find it clear that the state habeas court in this case correctly applied federal law.  Thus, the central issue is whether the state habeas court's conclusion that Waltz's plea was not induced by Caver's alleged promise involved an unreasonable determination of the facts.

Although the Supreme Court has declined to adopt a <u>per se</u> rule rendering guilty pleas invulnerable to collateral attack, a defendant seeking to mount such a challenge must overcome the "formidable barrier" created by the defendant's sworn statements during the plea colloquy.  <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977) (citing <u>Fontana v. United States</u>, 411 U.S. 213, 215 (1973)).[5]  The Court in <u>Mary v. Johnson</u> summarized the applicable standard:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

---

[5] <u>See also</u> <u>Barnes v. United States</u>, 579 F.2d 364, 366 (5th Cir. 1978) ("Where, from the transcript, the plea-taking procedures are clear and regular on their face, a petitioner asserting the existence of a bargain outside the record and contrary to his own statements under oath bears a heavy burden.").

467 U.S. 504, 509 (1984) (citation and internal quotation marks omitted). The Court has therefore left open the possibility that a defendant may be entitled to relief if he can show that the guilty plea was the product of a misrepresentation by his attorney or by the prosecutor. See Blackledge, 431 U.S. at 75; see also Davis v. Butler, 825 F.2d 892, 894 (5th Cir. 1987) ("If Davis's attorney did promise a pardon within three years, it could have rendered Davis's guilty plea unknowing and involuntary." (citations omitted)).

In the present case, Waltz was informed of his rights and he expressly denied the existence of any promises outside the plea agreement during his colloquy before the sentencing judge. To refute this testimony, Waltz points to his testimony and the testimony of his sisters at the state habeas hearing indicating that Caver promised him a shorter sentence than the forty-year sentence that was formally imposed.

The state habeas court began by observing that Waltz had the burden of showing that his guilty plea was involuntary because it was the product of fraud or misrepresentations by counsel. Applying this standard to the facts in the instant case, the court found that Waltz's evidence was not sufficient to show that Caver had, in fact, made any actual promise of a shorter sentence or an early release. Instead, the evidence at most proved that Caver intended to seek an early release of some kind for Waltz. Cf. Davis, 825 F.2d at 894 (observing that the defendant must show "'an

7

actual promise has been made to [him] rather than there being merely an 'understanding' on his part'" (citation omitted)).

Although Waltz did put forward some evidence that Caver promised him an early release, the state habeas court's determination of the facts was not unreasonable based on the evidence presented at the hearing. The court concluded that Waltz's testimony concerning the alleged promise was not credible because it was not consistent with the allegations in the habeas petition or with the testimony of other witnesses. The court found more plausible testimony by various witnesses indicating that Caver simply intended to seek parole or clemency for Waltz. The court also declined to place significant weight on the testimony of Waltz's sisters. Since his sisters did not have an opportunity to convey to Waltz the terms of any promises that Caver made to them, the court reasoned that Waltz could not have relied on any representations made to his sisters. These findings and the conclusion that Waltz's plea was voluntary are consistent with the evidence presented at the hearing and are therefore not unreasonable determinations of fact.

The only remaining question is whether the Louisiana Supreme Court's later decision to sanction Caver--based in part on the alleged fraudulent promise to Waltz--affects the statutory presumption that the state habeas court's factual findings were correct or affects our holding that the state court did not make an unreasonable determination of facts. We hold that it does not.

8

Our review under the AEDPA is strictly limited to determining whether the state habeas court's decision "was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*." 28 U.S.C. § 2254(d)(2) (emphasis added). Because the state supreme court did not issue its decision sanctioning Caver until over a year after the conclusion of Waltz's state habeas hearing, the state supreme court's subsequent findings in an ancillary matter are not relevant to our review of the state habeas court's judgment.

It is not our job to speculate how the state supreme court would resolve any possible conflicts between the factual findings in Caver's disciplinary proceedings and those of the state habeas court. If Waltz wishes to pursue this argument, he must do so first in the state courts. We, of course, express no opinion on the merits of the argument.

### III

Based on the foregoing, we conclude that the state habeas court's decision involved neither an unreasonable application of federal law nor an unreasonable determination of facts in the light of the evidence before it. As a consequence, the district court correctly held that Waltz is not entitled to habeas relief.

AFFIRMED.